**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                  Case No. 8:24-cr-00018-WFJ-NHA

PEDRO JESUS SUAREZ-AGUILAR,

     Defendant.
_____/

## REPORT AND RECOMMENDATIONS

I respectfully recommend that the Court deny the Defendant's Motion to Dismiss and for Immediate Release (Doc. 91), and conduct proceedings pursuant to 18 U.S.C. § 4244, consistent with the United States' proposal.

### I.   Background

The Defendant, Pedro Jesus Suarez-Aguilar, was charged with nine drug offenses. Docs. 1, 12. He later entered into a plea agreement with the United States and pleaded guilty to one count of conspiring to possess with intent to distribute 500 grams or more of a mixture containing cocaine. Docs. 28, 32. On July 24, 2024, the Court accepted the guilty plea and adjudicated the Defendant guilty. Doc. 36.

However, shortly before the sentencing hearing, which had been scheduled for November 19, 2024, defense counsel moved to continue the

hearing, based on competency concerns. Doc. 43. In his motion to continue, defense counsel explained that the Defendant had struggled with speech and comprehension since December 2023, when he had suffered a stroke and been hospitalized for several days, but that Dr. Melvin Pagan-Hernandez had evaluated the Defendant in February 2024 and determined that he was competent. *Id.* After a more recent evaluation in October 2024, however, the same doctor opined that the Defendant's condition had deteriorated and that he had become incompetent to proceed. *Id.*

Sentencing was continued (Doc. 44) and the Defendant subsequently moved for a determination of incompetency, relying on Dr. Pagan-Hernandez's latest report (Doc. 50). The United States did not oppose the motion. Doc. 50.

On December 10, 2024, after a hearing, the Court found by a preponderance of evidence that the Defendant suffered from a mental disease or defect rendering him unable to understand the nature of the proceedings against him and to assist in his defense. Doc. 52 (sealed). The Court committed the Defendant to the custody of the Attorney General for hospitalization in a suitable facility for treatment for a reasonable period and directed that facility's director to report within four months of the Defendant's hospitalization whether there was a substantial likelihood that the Defendant's competency could be restored in the near future. Doc. 52. On April

22, 2025, the Defendant was admitted to the Mental Health Unit of FMC-Butner in North Carolina. Doc. 57 (sealed).

On August 26, 2025, the Acting Warden of FMC-Butner submitted a report containing a Forensic Evaluation of the Defendant, completed by forensic psychologist Dr. JohnRobert Jones. Doc. 64 (sealed). Dr. Jones' Forensic Evolution concluded that, due to a "neurocognitive disorder which cannot be placed in remission with psychiatric, medical, or therapeutic intervention," the Defendant was incompetent as defined by 18 U.S.C. § 4241, and that there was no substantial probability that his competency could be restored in the foreseeable future. Doc. 64 p. 20. The Forensic Evolution also stated that a "risk panel" found that the Defendant was not a danger to others or to property, making him ineligible for civil commitment. *Id.*; *see* 18 U.S.C. § 4246.

Over the next five months, the Court held several status conferences in which it asked the parties how they wished to proceed. In September 2025, at the first of the status conferences following the Forensic Evaluation, the United States indicated that it was unlikely to challenge Dr. Jones' conclusion that the Defendant was incompetent and unrestorable. Doc. 67. The United States indicated that it would consider voluntarily dismissing the indictment, but the parties were both concerned about the Defendant's inability to care for himself and his lack of any community member who could do so if the

Defendant were released. Doc. 67. Then, in October 2025, the United States stated that it would *not* dismiss the indictment, but would instead move to commit the Defendant to a suitable facility for hospitalization in lieu of sentencing, pursuant to 18 U.S.C. § 4244. Doc. 74. In December 2025, the United States confirmed that such a motion was forthcoming, and counsel for the Defendant indicated that it would support, or at least not oppose, the motion. Doc. 81. However, at the next status conference, held on March 3, 2026, the parties disagreed about the appropriate next steps. Doc. 87. The Court directed the parties to file documents explaining their respective positions. Doc. 87.

On April 7, 2026, the Defendant filed the present Motion to Dismiss and for Immediate Release, arguing that 18 U.S.C. § 4244 is inapplicable to this case, and that the Defendant is entitled to dismissal and immediate release under 18 U.S.C. § 4241 and the Fifth Amendment. Doc. 91. The next day, the United States filed a memorandum in support of its position that the Court should proceed under 18 U.S.C. § 4244 and commit the Defendant to a suitable facility for hospitalization under a provisional sentence in lieu of formal sentencing. Doc. 92.

On April 27, 2026, the Court held a hearing on the Defendant's motion and on the United States' proposal, where the Court directed the parties to submit additional briefing on the appropriate procedures for their respective

4

proposals. Doc. 94. Both parties submitted additional briefing in May. Docs. 96, 97.

## II.   Legal Authority

The two statutes at the center of the parties' disagreement are found within Chapter 313 of Title 18 of the United States Code, which contains procedures relevant to "Offenders with Mental Disease or Defect." The Defendant claims he is entitled to release based on the procedures outlined in 18 U.S.C. § 4241. The United States asserts that the Court should follow the hospitalization procedures set forth in 18 U.S.C. § 4244.

### a.  18 U.S.C. § 4241

The statute on which the defendant relies is 18 U.S.C. § 4241, titled "Determination of mental competency to stand trial [or] to undergo post release proceedings." Section 4241 allows any party or the court to move for a determination of a defendant's competency, "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant." 18 U.S.C. § 4241(a). This language makes clear that section 4241 can be invoked at any time before a defendant is sentenced—that is, either before or after conviction.

For "reasonable cause," the court may order the psychological evaluation of the defendant and then must hold a hearing to determine whether the defendant is competent to proceed. *Id.* § 4241(a)–(d). Specifically, the court

must determine whether "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* § 4241(d). If the court finds by a preponderance of evidence that the defendant is incompetent, it must commit the defendant to the custody of the Attorney General, and the Attorney General must "hospitalize the defendant for treatment in a suitable facility." *Id.*

Once the court commits an incompetent defendant to the Attorney General's custody pursuant to section 4241(a), the Attorney General must direct the defendant to be evaluated during a period of up to four months, at the end of which, the defendant's custodians must determine whether there is a substantial probability that the defendant's competency could be restored within the foreseeable future. *Id.* § 4241(d)(1). If there is a substantial likelihood that the defendant's competency could be restored in the foreseeable future, the defendant may be hospitalized "for an additional reasonable period of time," until either his competency is restored, or the pending charges "are disposed of according to law," whichever comes first. *Id.* § 4241 (d)(2); *see United States v. Donofrio,* 896 F.2d 1301, 1303 (11th Cir. 1990) ("Any additional period of confinement depends upon the court's finding there is a probability that within the additional time he will attain capacity to permit trial . . .) (citing 18 U.S.C. § 4241(d)(2)(A)).

If the defendant remains incompetent and the court does not find that his competency will likely be restored, "the defendant is subject to the provisions of sections 4246 and 4248." 18 U.S.C. § 4241(d). Those sections of Chapter 313 provide for civil commitment of certain defendants found to be a danger to others or to property. *See id.* § 4246(d) (providing for commitment for hospitalization of a defendant whom the court determines "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another"); *id.* § 4247(d) (providing for civil commitment of a defendant whom the court determines to be "a sexually dangerous person").

    b.  <u>18 U.S.C. § 4244</u>

Section 4244 is titled "Hospitalization of a convicted person suffering from mental disease or defect." Unlike section 4241, section 4244 applies only to a defendant during the period between his conviction and sentencing. The statute allows the defendant, the United States, or the court to call for a hearing only after the defendant has been "found guilty of an offense," but "prior to the time the defendant is sentenced." *Id.* § 4244(a).[1]

---

[1] The statute requires the defendant or the United States to move for a hearing within ten days of the defendant's conviction, but permits the court to order a hearing, "on its own motion," "at any time prior to the sentencing of the defendant." *Id.* § 4244(a).

While section 4244 applies to a narrower procedural period than section 4241, it applies to a broader class of persons. Section 4244's application is not limited to defendants who are legally incompetent to proceed. Pursuant to Section 4244, a court may consider whether any defendant "suffering from a mental disease or defect" "should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment." *Id.* § 4244(d). The language does not require that a court first find a defendant's mental disease or defect renders him "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *See id.* § 4241(d).

Section 4244's hospitalization procedure also differs from that of section 4241. A court ruling that the defendant should be hospitalized in lieu of sentencing must commit that defendant to the custody of the Attorney General for care in a suitable facility under "a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty." *Id.* § 4244(d). However, the statute provides for termination of this provisional sentence if the director of the defendant's facility determines that the defendant "has recovered from his mental disease or defect to such an extent that he is no longer in need of custody for care or treatment in such a facility," at which point "the court shall proceed finally to sentencing and may modify the provisional sentence." *Id.* § 4244(e).

8

### III.    Application of Section 4241

Here, the Court has substantially exhausted the procedures dictated by section 4241. After he pleaded guilty, but before sentencing, the Defendant moved for a hearing to determine his competency. *See* Doc. 50 (sealed); 18 U.S.C. § 4241(a). After the hearing,[2] the Court issued an order finding by a preponderance of evidence that the Defendant suffered from a mental disease or defect rendering him unable to understand the nature of the proceedings against him and to assist in his defense, and ordered the Defendant committed to the custody of the Attorney General for hospitalization in a suitable facility for treatment for a reasonable period. *See* Doc. 52 (sealed); 18 U.S.C. § 4241(d).

Approximately four months after the Defendant was hospitalized, the warden of FMC-Butner reported that the Defendant was still incompetent and that it was unlikely that his competency could be restored in the foreseeable future. Doc. 64. The Defendant was subsequently transported back to this District and committed to the custody of the United States Marshal to await sentencing or other resolution. Doc. 87.

---

[2] Because the Defendant had already received a psychiatric examination, the Court held a hearing without ordering an additional examination. *See* 18 U.S.C. § 4241(b) ("Prior to the date of the hearing, the court *may* order that a psychiatric or psychological examination of the defendant be conducted. . .") (emphasis added).

9

Since the Defendant's return from FMC-Butner, neither party has contested the facility's Forensic Evaluation finding him incompetent and not eligible for restoration, and both parties' proposals assume the Defendant is incompetent and unrestorable. *See* Docs. 67, 96, 97.

Based on the Forensic Evaluation, the record, and the parties' presentations, I find that the Defendant is incompetent and unlikely to be restored to competency in the foreseeable future. With this finding, section 4241 notes that the Court *may* proceed under 18 U.S.C. §§ 4246 and 4248, to determine whether the Defendant is dangerous and requires civil commitment. *See* 18 U.S.C. § 4241(d) ("If . . . it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248."). However, the Forensic Evaluation completed at the conclusion of the Defendant's term of hospitalization and attempted competency restoration explicitly found that the Defendant is *not* dangerous for the purposes of section 4246, *see* Doc. 64 p. 20, and no party or evaluator has suggested that he may be sexually dangerous.

## IV.   Analysis

The Defendant argues that, because section 4241 does not explicitly direct the Court to any other statute, upon exhaustion of sections 4241, 4246, and 4248, the Defendant must be immediately released. Doc. 96 pp. 5, 15–16.

10

The Defendant further argues that the Fifth Amendment likewise demands the Defendant's immediate release.

The United States argues that the Court should proceed under section 4244, which specifically applies to a convicted criminal defendant who is found, between the time of conviction and sentencing, to be "suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a); *see generally* Docs. 92, 97. In addition, the United States notes that "the defendant's request for immediate release would likely lead to the defendant's homelessness or worse, as there appears to be no plan to take care of him, and he admittedly can no longer care of himself." Doc. 97 p. 4.

I find unpersuasive the Defendant's argument that section 4241 prohibits the application of any other statute not expressly cited therein and that, therefore, section 4244 is inapplicable in this case. I am also unpersuaded by the Defendant's argument that the Fifth Amendment requires his immediate release. I recommend that the Court deny the Defendant's motion (Doc. 91) and proceed according to the procedures outlined in section 4244.

11

a. <u>The plain language of section 4244 makes clear that the statute applies in this case.</u>

The Defendant argues that section 4244 is inapplicable here because it does not apply to incompetent defendants. That position is at odds with the plain language of the statute.

"As always, we begin with the statutory text." *United States v. Alhindi*, 97 F.4th 814, 824 (11th Cir. 2024). Section 4244 expressly applies to convicted defendants "suffering from a mental disease or defect." 18 U.S.C. § 4244(d). The Defendant correctly notes that this standard is distinct from the standard for competency found in section 4241, which applies only to defendants whose mental diseases or defects hinder their ability to appreciate the proceedings against them and assist in their defense. Section 4244 is broader, applying to any defendant with a mental disease or defect. That is, it applies to all persons with mental diseases or defects, whether or not the mental affliction divests them of the ability to appreciate their proceedings or assist in their defense. Certainly, defendants whose mental afflictions render them incompetent fall within this category. [3]

---

[3] In reaching this conclusion, I acknowledge that another district court has concluded that section 4244 does not apply to convicted defendants who have been found incompetent. *See United States v. Morris*, 550 F. Supp. 2d 1290 (M.D. Ala. 2008). The Defendant relies on *Morris* to support his contention that section 4244 cannot apply in this case, but the cases are distinguishable. The *Morris* order was issued in response to the United States' contention that section 4244 should be invoked *instead* of section 4241, where

Indeed, several circuit courts have assumed without discussion that the statute applies to incompetent defendants. *See, e.g., United States v. Ewing*, 494 F.3d 607, 614 (7th Cir. 2007) ("When a defendant is found incompetent to stand for sentencing, he is committed for treatment and provisionally sentenced to the maximum term authorized by the offense.") (citing 18 U.S.C. § 4244(d)); *United States v. Mason*, 52 F.3d 1286, 1288 n. 2 (4th Cir. 1995) ("Section 4244 concerns a defendant's competence to be sentenced, whereas § 4241 relates to competence to stand trial."); *cf. United States v. Lindsey* , 339 F. App'x 956, 959 (11th Cir. 2009) (unpublished) (describing section 4244 as applicable when a court "has reasonable cause to believe that a defendant is mentally incompetent").[4]

---

the court had determined that the convicted defendant was incompetent but had not yet committed the defendant for restoration. *See id.* at 1291. Here, by contrast, the Court has already exhausted the procedures in section 4241 and thus cannot commit the Defendant for further (likely futile) attempts at competency restoration. The court in *Morris* appropriately opted to attempt to restore the defendant pursuant to the procedures in section 4241 instead of proceeding directly to the provisional sentencing procedure in section 4244—a choice not available to this Court. Nonetheless, to the extent *Morris* concludes that section 4244 *cannot* be applied to incompetent defendants, I respectfully disagree for the reasons stated herein.

[4] Even the Eighth Circuit case on which the Defendant relies for support, *United States v. Jensen*, 639 F.3d 802 (8th Cir. 2011), does not state or suggest that section 4244 is inapplicable to incompetent defendants. I agree with the Eighth Circuit that section 4244 may address an "altogether different situation" than can section 4241, in that it can be invoked in cases in which a defendant is competent. *See* 639 F. 3d at 805. But even *Jensen* describes section 4241 as requiring "a greater and more specific showing" than does the "provisional sentencing option of § 4244." *Id.* This description of the difference

Section 4244 applies to convicted defendants "suffering from a mental disease or defect." 18 U.S.C. § 4244(d). Consistent with the Forensic Evaluation and the parties' stipulations to its findings, the Court has found that the Defendant "is currently suffering from a mental disease and defect, namely major neurocognitive disorder." *See* Doc. 64 p. 20.  Section 4244 applies here.

b. <u>A provisional sentence would not violate the Defendant's Fifth Amendment due process rights.</u>

The Defendant next argues that proceeding under section 4244 would violate his Fifth Amendment right to due process. Doc. 96 pp. 13–15. I disagree.

"The Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant who is incompetent." *Rahim*, 431 F.3d at 759. This prohibition extends to the sentencing stage. *Id.*

---

between the two statutes acknowledges that the category of persons who may be subject to section 4244 is broader and includes many of the same persons who may be subject to commitment as incompetent under section 4241.

Furthermore, section 4244 appears particularly important in serving the unique category of convicted incompetent defendants. While section 4244 may be invoked for hospitalization of a competent convicted person with mental health difficulties, courts have other options for assisting those defendants aside from delaying formal sentencing, such as hospitalizing a mentally ill defendant after sentencing under 18 U.S.C. § 4245, or, contemporaneously with sentencing, recommending to the Bureau of Prisons that such a person serve his sentence in a special facility or receive mental health treatment during his incarceration, pursuant to 18 U.S.C. § 3621.  By contrast, neither of these options is available to an incompetent defendant, who cannot be formally sentenced until he is competent. *See Rahim*, 431 F.3d at 759. Thus, the statute seems particularly important for cases in which a defendant becomes incompetent after conviction and prior to sentencing.

14

The Defendant pleaded guilty to, and the Court adjudicated him guilty of, Count One of the indictment. The sentencing phase remains. The Defendant argues that, if the Court determines that the Defendant should be hospitalized in lieu of formal sentencing, the imposition of a "provisional sentence" would violate his right to due process.

The Defendant is correct that formally sentencing him while he is incompetent would be unconstitutional, but he is incorrect that the "provisional sentence" permitted by section 4244 qualifies as a sentencing to which ordinary due process rights attach. A provisional sentence under section 4244 materially differs from a formal sentence.

First, the Eleventh Circuit held—in examining the previous version of section 4244 (then codified as 18 U.S.C. § 3552)—that the imposition of a "provisional sentence" is a "non-final order," unlike a formal sentence. 912 F.2d 1371, 1372 (11th Cir. 1990). And a provisional sentence does not impose a fixed term of commitment; a court must "proceed finally to sentencing" if, at any time, the director of the facility in which the defendant is hospitalized determines that the defendant no longer needs that level of care. *See* 18 U.S.C. § 4244(e). Even in cases in which it is unlikely that such a determination will ever be made, the facility's director still must submit annual reports to the court describing the committed person's mental condition and making recommendations, *see id.* § 4247(e)(B) (describing reporting requirements for

15

persons hospitalized pursuant to section 4244), and the hospitalized person's counsel and legal guardian have statutory rights to move for a hearing to justify the person's continued hospitalization, *see id.* § 4247(h). The principle that an incompetent person cannot receive a formal sentence therefore does not extend to prevent the court from ordering a provisional sentence of hospitalization under section 4244.

Advancing a slightly different version of his due process argument, the Defendant asserts that, because he is elderly and faces a maximum sentence of 40 years, imposing a provisional maximum sentence on him with little possibility of improvement in his condition "would be tantamount to indefinitely committing him on the basis of his competency." Doc. 96 p. 14. For support, the Defendant cites *Jackson v. Indiana*, in which the Supreme Court held that an incompetent defendant "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

*Jackson* examined whether a state competency law complied with the Fourteenth Amendment's due process guarantee, and explained that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.*

16

The Defendant acknowledges that "*Jackson* is distinguishable on the basis that [the Defendant here] is at the sentencing phase of these proceedings," but nonetheless states that subjecting him to a provisional sentence of hospitalization would be a "violation of *Jackson* and due process." Doc. 96 p. 14.

But the distinguishing features of *Jackson* cannot be waved away. Contrary to the Defendant's description, a provisional sentence in this case would be neither "indefinite," nor solely based on the Defendant's incompetency. The provisional sentence of 40 years is a decidedly definite term of commitment—and, to the extent a provisional sentence is less definite than a formal sentence, it is only so because it may be modified to a *shorter* sentence pursuant to section 4244(e). And, crucially, provisional sentences imposed pursuant to section 4244 are not imposed solely based on a defendant's incompetence. Rather, they require multiple prerequisites, including a defendant's conviction for a federal crime, and a determination that hospitalized care is more appropriate than a traditional incarcerate sentence. Thus, the central concern behind *Jackson*—that every defendant must eventually "be given an opportunity to obtain a trial to determine whether or not he is guilty as charged or should be released," 406 U.S. at 736—is not present here, where the Defendant has already been found guilty, and the provisional sentence he faces is directly correlated to the charge of conviction.

17

In sum, imposing a provisional sentence pursuant to section 4244 would not violate the Defendant's Fifth Amendment due process rights. Based on that conclusion, and because section 4244 is plainly applicable in this case, the Defendant's motion for release should be denied, and the Court should proceed pursuant to section 4244.

## V.    Conclusion

I respectfully recommend that the Court deny the Defendant's motion (Doc. 91) and adopt the United States' proposal (Doc. 92) to conduct proceedings pursuant to 18 U.S.C. § 4244 to determine whether, in light of the Defendant's mental disease or defect, "he is in need of custody for care or treatment in a suitable facility."

Specifically, I recommend that, in accordance with the United States' proposal, the Court request an additional determination from FMC-Butner on the specific question of whether the Defendant is in need of custody for care or treatment in a suitable facility.[5] *See id.* § 4244(b); Doc. 97 p. 3.

Upon receiving the report, I recommend that the Court "order [a hearing on the present mental condition of the defendant] on its own motion," *see* 18 U.S.C. § 4244(a), and determine whether the Defendant should be committed

---

[5] Alternatively, if FMC-Butner cannot provide an opinion on the issue, I recommend that the Court order, or refer for order, an evaluation by a local psychiatric evaluator on the matter.

to the custody of the Attorney General for hospitalization, for the term of a provisional sentence of 40 years, in lieu of being sentenced to imprisonment. *See id.* § 4244(d).[6]

**SUBMITTED** for the District Court's consideration on June 24, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts

---

[6] Caselaw offers little guidance for this determination beyond the insight that the determination of whether a defendant "should" be hospitalized after conviction is distinct from the question of whether the defendant is competent. But circuit courts discussing section 4244 have identified three types of reasons to hospitalize a defendant pursuant to the statute: "(1) protecting mentally ill prisoners who might be at substantial risk if placed in the general prison population; (2) ensuring the safety of other inmates; and (3) providing humanitarian treatment for mentally ill inmates." *United States v. Jensen,* 639 F.3d 802, 805–06 (8th Cir. 2011) (quoting *United States v. Abou–Kassem,* 78 F.3d 161, 165 (5th Cir.1996)).

from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.